UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CR-00058-FL2

UNITED STATES OF AMERICA,          .
                                   .
                                   .     OCTOBER 16, 2014
VS.                                .     NEW BERN, NORTH CAROLINA
                                   .
AKBA JIHAD JORDAN,                 .
                                   .
              DEFENDANT.           .
. . . . . . . . . . . . . . . .

* * * * * * * * * * * * * * * * * * * * * * * * * * *
ARRAIGNMENT HEARING
BEFORE THE HONORABLE ROBERT B. JONES, JR.
UNITED STATES MAGISTRATE JUDGE PRESIDING

APPEARANCES OF COUNSEL:

FOR THE GOVERNMENT  -  MR. JASON M. KELLHOFER
                       ASSISTANT UNITED STATES ATTORNEY
                       UNITED STATES ATTORNEY'S OFFICE
                       310 NEW BERN AVENUE, SUITE 800
                       RALEIGH, NORTH CAROLINA 27601

FOR THE DEFENDANT   -  MR. ROBERT HOOD HALE, JR.
                       ROBERT H. HALE, JR. & ASSOCIATES
                       16 W. MARTIN STREET, SUITE 101
                       RALEIGH, NORTH CAROLINA 27602


COURT REPORTER      -  GAYE H. PAUL
                       CAROLINA COURT REPORTERS, INC.
                       105 OAKMONT DRIVE, SUITE A
                       GREENVILLE, NORTH CAROLINA 27858
                       (252 355-4700

Proceedings recorded by  stenomask, transcript produced  from
dictation.

P R O C E E D I N G S

JUNE 16, 2014

(ON THE RECORD AT 1:58 P.M.)

THE COURT:  I'm now going to issue the Advice of Rights to those defendants appearing before The Court this morning for arraignment.  I ask each defendant appearing before The Court to listen carefully to the following information.  This information will be an important part of your case, and you may be called upon today to make decisions based on this information.  I now advise each defendant as follows.

You are here because a Bill of Indictment has been returned against you by the Grand Jury or the United States Attorney has filed a Criminal Information charging you with the violation of one or more Federal Criminal Laws.  You have certain rights are related to these charges, and I'm going to explain those rights to you.

As explained to you at your initial appearance, you have the right to remain silent.  You have the right to be represented by counsel and, if necessary, to have The Court appoint counsel to represent you in your case, including at trial.

You have the right to a trial by jury, and at such a trial you are presumed to be innocent.  You do not have to prove anything.  Instead, the burden is upon the

1  Government through its attorneys and agents to prove you

2  guilty by competent evidence and beyond a reasonable doubt.

3  The method for the Government to do this is to call its

4  witnesses who would testify under oath, in front of you, in

5  front of a jury, and in front of the presiding district

6  judge.  You, through your lawyer, will then have the right to

7  cross-examine those witnesses and to object to any evidence

8  you deem to be legally improper.

9         You would also have the right to use the

10  subpoena power of this court to bring to court witnesses who

11  may be favorable to you, and to have these witnesses testify

12  under oath.  You also may elect to take the witness stand to

13  testify under oath, but only if you wish to do so.  No one

14  can force you to take the witness stand and testify if you do

15  not want to.  If you choose not to testify, the fact that you

16  do not testify cannot be held against you, and the District

17  Judge will instruct the jury accordingly.

18         If you plead guilty to an offense this morning,

19  you will waive your right to a trial by jury and the rights

20  that I've just mentioned, other than your right to an

21  attorney.

22         You also will have to waive your right not to

23  incriminate yourself, because I cannot accept your plea of

24  guilty as to a particular offense or offenses unless you

25  admit in open court you're guilty as to that particular

1   offense or offenses.

2         By pleading guilty to a felony offense or being

3   convicted by a jury and adjudicated guilty of a felony

4   offense, whether that is by a Bill of Indictment or a

5   Criminal Information, you may lose certain valuable civil

6   rights, such as the right to possess any kind of firearm, the

7   right to serve on a jury, the right to hold public office and

8   the right to vote.

9         If you plead guilty or are found guilty at

10   trial, you may be ordered to make restitution in money or

11   services to the victims of your crime, if they are

12   identifiable.  In certain cases, you may be required to

13   forfeit property to the United States Government.

14         If your offense involved fraud, you may be

15   required to provide notice of your conviction to the victims

16   of your crime.  In addition, if you are not a United States

17   citizen, your immigration status may be adversely affected

18   and you may be subject to deportation, exclusion or voluntary

19   departure and prevented from obtaining United States

20   citizenship.

21         If you are charged with a sex crime, a

22   conviction may result in substantial future restriction on

23   where you may live or work, and with whom you may associate.

24   In addition, at the conclusion of any sentence that is

25   imposed, you may be subject to civil commitment as a sexually

1  dangerous person.

2          As required by the law, a special assessment of

3  $100 for each felony offense or counts to which you plead

4  guilty or are found guilty at trial will be imposed against

5  you.  This special assessment of $100 per count will be in

6  addition to and on top of any fine that may also be imposed.

7          You may be given a term of supervised release

8  following any actual term of incarceration that is imposed.

9  Supervised release is similar to what you may know as

10  probation.  The term of supervised release in each individual

11  case can range anywhere from one year up to life, based upon

12  your individual criminal history and the offense.  Supervised

13  release would require you to report to your assigned

14  probation officer from time to time, and to comply with any

15  court imposed or directed instructions.  If you violate

16  supervised release conditions, you may be required to serve

17  an additional time of incarceration.

18          The United States Sentencing Commission has

19  established advisory guideline ranges for all Federal crimes.

20  Although the District Judge is no longer required to

21  specifically follow the guidelines in sentencing you, he or

22  she is required to calculate the advisory guideline for your

23  offense or offenses.  The District Judge will then consider

24  that guideline range, as well as other relevant factors as

25  set forth in 18 USC Section 3553A before imposing a sentence.

1          The District Judge has the authority in some

2     circumstances to depart upward or downward from that advisory

3     guideline range, and the District Judge will also examine

4     other statutory sentencing factors under 18 USC Section 3553A

5     that may result in a sentence that is either greater or less

6     than the advisory guideline sentence.  If the District Judge

7     imposes a sentence outside the guideline range, he or she is

8     required to explain on the record at the time of sentencing

9     his or her reasons for imposing a sentence outside the

10    guidelines.

11         Under some circumstances you may have the right

12    to appeal your sentence, even though you pled guilty to the

13    underlying crime.  However, if you have waived the right to

14    appeal your sentence in a plea agreement with the United

15    States, that agreement may be binding upon you.

16         You need to understand that parole has been

17    abolished in the United States Court System, so if you

18    receive a sentence which includes an active term of

19    incarceration, you will not receive parole.

20         Regarding plea agreements, you should know that

21    The Court is not a party to a Plea Agreement and does not

22    participate in the plea agreement negotiations.  However, The

23    Court is obligated to examine carefully any plea agreement

24    with the Government to be sure that the agreement conforms to

25    the objective of sentencing.  The standards of acceptance of

plea agreements include those stated in Rule 11 of the

Federal Rules of Criminal Procedure, which provides in part

as follows.

In one type of plea agreement, the Government

recommends or agrees not to oppose the defendant's request

that a particular sentence or sentencing range is

appropriate, or that a particular provision of the Sentencing

Guidelines or policy statement or sentencing factor does or

does not apply.  To the extent that a plea agreement is of

this type, if The Court accepts the agreement, the

recommendation or request is not binding on The Court.

If The Court does not follow the recommendation

or request, the defendant has no right to withdraw his or her

guilty plea.  On the other hand, there may be plea agreements

in which The Government agrees not to bring or will seek

dismissal of other charges on which the Government agrees

that a specific sentence or sentencing range is the

appropriate disposition of the case, or that a particular

provision of the Sentencing Guidelines or policy statement or

sentencing factor does or does not apply.

To the extent that a plea agreement is of this

type, if The Court accepts the agreement, then such agreed

upon terms are binding on The Court, and the agreed upon

disposition will be included in the judgment, the United

States Plea Agreement provides otherwise.

1    If The Court does not accept this type of plea

2 agreement where there is a binding agreed upon disposition,

3 the defendant will be given an opportunity to withdraw his or

4 her plea.  If the plea is not withdrawn, The Court is not

5 required to follow the plea agreement and may dispose of the

6 case less favorably than the plea agreement contemplated.

7    A written pre-sentence report will be prepared

8 by the probation office to assist the District Judge in

9 sentencing.  You will be asked to give information for this

10 report, and you are entitled to have your attorney present

11 during the interview.  It is important that the pre-sentence

12 report be accurate because it will likely determine your

13 punishment range.

14    After that report has been prepared, you and

15 your attorney will have an opportunity to review that report

16 and to object to any aspects of the report you believe are

17 inaccurate.  Any objections to the pre-sentence report must

18 be made in writing on a timely basis.  If you do not contest

19 the facts set forth in the pre-sentence report, and The

20 Court's independent findings coincide with those facts, those

21 facts will be accepted by The Court as correct, and will be

22 relied upon in determining the guidelines applicable to your

23 case.

24    If a party seeks to advocate for a sentence

25 which varies from the sentencing guidelines, that party shall

1    file a written memorandum advocating that position and serve

2    a courtesy copy on the probation officer who authored the

3    pre-sentence report.

4            At the time of sentencing, you and your attorney

5    will be afforded an opportunity to speak to The Court and to

6    argue for a sentence that you and your attorney feel is

7    appropriate under 18 USC Section 3553A.  Judge Flanagan does

8    not permit oral testimony in the nature of character evidence

9    at the sentencing hearing, but in lieu thereof she will be

10   happy to receive from your attorney written sentencing

11   memoranda or character letters, all of which should be

12   furnished to Judge Flanagan so that they are received at

13   least one week, seven days, prior to the date you are

14   scheduled to be sentenced.

15           Finally, if there are victims of the offenses

16   for which you are to be sentenced, these victims will be

17   given an opportunity to be heard at that sentencing hearing.

18   That concludes the explanation of your rights.

19           THE CLERK:  The Court calls the following case

20   for arraignment, United States of America versus Akba Jihad

21   Jordan, Court File Number 5:14-cr-58-FL Defendant 2.

22           (THE DEFENDANT WAS AFFIRMED.)

23           THE COURT:  Alright, Mr. Jordan, I've got in my

24   hands here a document in your case.  This document is

25   entitled Consent To Proceed Before A United States Magistrate

1    Judge.  This document appears to be signed by you as well as

2    your attorney, and representatives from the U.S. Attorney's

3    Office.  Mr. Jordan, sir, did you sign this document?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And Mr. Jordan, sir, is it your

6    knowing and voluntary desire that for the purpose of

7    conducting your arraignment today and taking your plea that

8    these proceedings may be conducted before me, as a U.S.

9    Magistrate Judge?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Thank you.  You can have a seat.

12   Okay, Mr. Jordan, sir, do you understand that you are now

13   under oath, and that if you answer any of my questions

14   falsely that your answers may later be used against you in a

15   separate prosecution for perjury or making a false statement?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Mr. Jordan, sir, what is your full

18   name?

19             THE DEFENDANT:  My name is Akba Jihad Jordan.

20             THE COURT:  And Mr. Jordan, sir, how old are

21   you?

22             THE DEFENDANT:  I am current 22 years old.

23             THE COURT:  And how far did you go in school?

24             THE DEFENDANT:  Made it to my junior year.

25             THE COURT:  In college?

1              THE DEFENDANT:  College.

2              THE COURT:  College?

3              THE DEFENDANT:  Yes, college.

4              THE COURT:  Okay.  Are you able to speak and

5     understand English?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Yes, sir.

8              THE DEFENDANT:  Are you currently or have you

9     recently been under the care of a physician or psychiatrist

10    or been hospitalized or treated for narcotics addiction?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  Have you taken any drugs, medicine,

13    pills, or had any alcoholic beverages in the past 24 hours?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Have you been furnished, Mr. Jordan,

16    with a copy of the charges that have been filed against you

17    in this case?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Okay.  And have you fully discussed

20    those charges and your case in general with your attorney?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Mr. Jordan, do you understand those

23    charges that have been filed against you in this case?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And do you understand what's

1   happening this afternoon?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Okay.  Now Mr. Hale, sir, have you

4   had any difficulty in communicating with Mr. Jordan, or do

5   you have a reason to doubt his mental competency?

6            MR. HALE:  No, Your Honor.

7            THE COURT:  Alright.  Does the U.S. Attorney's

8   Office have any reason to doubt Mr. Jordan's mental

9   competency in this case?

10           MR. KELLHOFER:  No, Your Honor.

11           THE COURT:  Let the record reflect The Court

12  finds as a fact that the defendant, Akba Jihad Jordan, is

13  competent to appear, to understand the nature of these

14  proceedings, and to ultimately plead in these matters.

15           Now Mr. Jordan, sir, have you had the time to

16  and have you in fact discussed your case with your attorney?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Are you satisfied with Mr. Hale's

19  advice and counsel to you in this case?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Now Mr. Jordan, sir, did you hear

22  and understand my explanation of your rights this afternoon?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Did you understand my general

25  explanation of how you might be sentenced?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Mr. Jordan, you received a copy of

3   the Indictment in your case charging you with one count, did

4   you not?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And do you understand what you're

7   charged with in that Indictment?

8          THE DEFENDANT:  Yes.  Yes, Your Honor.

9          THE COURT:  Okay.  Do you want me to read that

10  indictment to you aloud, or do you waive the reading of it?

11         THE DEFENDANT:  I'll waive.

12         THE COURT:  Okay.  I am, however, required to

13  remind you of the statutory maximum penalty, not the

14  guidelines that I spoke of earlier, but the statutory maximum

15  penalty regarding the count that you face.  Mr. Kellhofer,

16  could you remind Mr. Jordan as to the statutory maximum

17  penalty regarding the charge filed against him in the

18  indictment?

19         MR. KELLHOFER:  Yes, Your Honor.  With regard to

20  the one-count indictment involving a charge of 18 USC Section

21  2339A, the defendant faces maximum charge, potential charge

22  of 15 years imprisonment, $250,000 fine, three years

23  supervised release, two years imprisonment upon revocation of

24  supervised release, and a $100 special assessment.

25         THE COURT:  Okay.  Now Mr. Jordan, do you

1    understand the charge that's been filed against you in this

2    case, as well as the maximum punishment you face if convicted

3    of that charge?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Okay.  There appears to be a Plea

6    Agreement in this case.  Let me ask counsel, Mr. Hale, were

7    all formal plea offers by the Government conveyed to the

8    defendant is this case?

9              MR. HALE:  Yes, they were, Your Honor.

10             THE COURT:  Mr. Jordan, I have been provided a

11   seven-page document which appears to be signed by you, by Mr.

12   Hale, your attorney, as well as a representative from the

13   U.S. Attorney's Office.  It appears also from this document

14   that it's your intention to plead guilty to the single count

15   indictment in this case.  Now Mr. Jordan, sir, did you sign

16   this document?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And is it your intention to plead

19   guilty to the single charge contained in the indictment?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Let me ask you a few questions

22   regarding that.  Have you had an opportunity, Mr. Jordan, to

23   read and to discuss this plea agreement with your attorney,

24   and did you in fact do so before you signed it?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Now Mr. Jordan, does this plea

2    agreement represent in its entirety any and all agreements

3    that you have with the United States and U.S. Attorney?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Okay.  Did you understand, Mr.

6    Jordan, the terms, language, the words, the sentences, even

7    any legal phrases that are used in this plea agreement after

8    you discussed it with Mr. Hale?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:   Mr. Jordan, do you understand that

11   be entering into this plea agreement and entering a plea of

12   guilty that you will have waived or given up your right to

13   appeal or to collaterally attack all or a part of your

14   sentence?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  And Mr. Jordan, has anyone made any

17   other or different promises to you to get you to plead guilty

18   in this case, other than what is contained in the plea

19   agreement?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Has anyone threatened you in any way

22   to persuade you to either accept the plea agreement or to

23   plead guilty in this case?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  Okay.  Now Mr. Jordan, sir, are you

1  pleading guilty of your own free will, because you are in

2  fact guilty?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Mr. Jordan, do you understand that

5  the offense to which you are pleading guilty is a felony

6  offense, that if your plea is accepted, you will be found

7  guilty of that offense, and that that may deprive you of

8  valuable civil rights, such as the right to vote, the right

9  to hold public office, to serve on a jury, and to possess a

10 firearm?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  Do you understand that if you are

13 not a citizen of the United States, that in addition to other

14 possible penalties that you face, a plea of guilty may

15 subject you to deportation, exclusion or voluntary departure,

16 and prevent you from obtaining United States citizenship?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  Mr. Jordan, do you understand that

19 if I accept your plea of guilty today that you may not be

20 able to withdraw your plea and have a trial in this case?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  And Mr. Jordan, sir, have you

23 answered all my questions truthfully?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  Do you need any more time to think

1  about your plea or to discuss your case with Mr. Hale before

2  entering a plea?

3  THE DEFENDANT:  No, Your Honor.

4  THE COURT:  Okay.  Now Mr. Jordan, sir, how to

5  you plead to the charge contained in the indictment?

6  THE DEFENDANT:  Guilty, Your Honor.

7  THE COURT:  Mr. Jordan, did you, as the

8  Government has alleged in the one-count indictment, did you

9  beginning on a date no later than in or about May 2013 and

10 continuing until on or about March 19, 2014, in the Eastern

11 District of North Carolina and elsewhere knowingly conspire,

12 combine, confederate and agree with others to provide

13 material support and resources as defined in Title 18 USC

14 Section 2339AB, including training personnel and currency and

15 to conceal and disguise the nature, location, source and

16 ownership of such material support and resources, knowing and

17 intending that they were to be used in preparation for and in

18 carrying out a violation of Title 18 USC Section 956A, that

19 is a conspiracy to commit at places outside the United States

20 acts that would constitute the offense of murder and maiming

21 if committed in the special maritime and territorial

22 jurisdiction of the United States with one of the

23 conspirators committing an act within the jurisdiction of the

24 United States to effect an object of the conspiracy all in

25 violation of Title 18 USC Section 2339A; did you do all of

1  that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Alright, thank you.  You may have a

4  seat.  Would the Government please provide The Court a

5  factual basis supportive of Mr. Jordan's plea of guilty to

6  the single-count indictment, telling The Court what the

7  Government believes it could prove at a trial in this case?

8          MR. KELLHOFER:  Yes, Your Honor.  If required,

9  the Government would support its case beyond a reasonable

10  doubt through a variety of different pieces of information

11  and evidence.  The evidence would primarily consist or come

12  in through the testimony of human sources, as well as agents

13  of the FBI, in addition to recordings of Defendant Jordan in

14  communication with the individual he's been charged as

15  conspiring with, a Defendant Brown, as well as materials

16  obtained through search warrants.

17          Essentially, Your Honor, in this case the case

18  began with an investigation focused on a Defendant Brown.

19  Defendant Brown had reached out over the Internet to a FBI

20  source and had requested assistance in traveling overseas for

21  what he termed as Visa Vila, which essentially in the context

22  meant to assist certain organizations overseas engaged in

23  violence, primarily organizations which have been designated

24  as terrorist organizations.

25          As a result of that investigation into Brown,

1    further communications took place, and Brown informed the

2    confidential human source that he had brothers or other

3    individuals who were interested, as well, in traveling

4    overseas to engage in battle.

5            Through the investigation, one of those

6    individuals was recognized as Defendant Jordan.  It appeared

7    that Defendant Jordan and Defendant Brown knew each other

8    from attending college.

9            A human source began to assist on the case and

10   take recordings while meeting with both Defendant Brown and

11   Defendant Jordan, and within those recordings, between May of

12   2013 and March of 2014, here in the Eastern District of North

13   Carolina a number of things became clear and took place.

14           Defendant Jordan stated a number of times in

15   communications with Defendant Brown that it was a desire to

16   travel to either Yemen or Syria to engage in what they termed

17   as jihad, and which they later defined as battle.  Defendant

18   Brown has since pled guilty and additionally would be a

19   witness should the Government require it, in a case against

20   Defendant Jordan.

21           The specific desire was to join certain groups.

22   Those groups were listed as a AQUAP, which is the Al Queada

23   in the Arabian Peninsula.  Jibaht Al Nusra, known as JAN,

24   ISIS, know as the Islamic State in Iraq, and Sham, or Syria.

25   They specifically ruled out other groups, Your Honor, such as

1 the FSA, the Free Syrian Army, their reason being that the

2 desire ultimately was to join these groups to engage in

3 battle and per their ideology establish what is known as a

4 Khilafat, or a rule of Muslim rule, that the desire was to

5 begin in Syria and to move beyond Syria to what they

6 considered all of the Muslim Middle East.

7          During this time, Defendant Jordan specifically

8 assisted in training by virtue of assisting both Brown and

9 others in physical fitness, as well as weapons training.

10 Defendant Jordan at his home had an AK47, as well as many 14

11 -- and at least at one point displayed how to break down such

12 weapons, the usefulness of such weapons in certain

13 battlefield elements, and then conducted training within the

14 home in terms of how to enter rooms with the weapons and

15 similar techniques.

16          During this time frame, Defendant Jordan was

17 aware and later confessed during his post-arrest interview

18 that -- Mirandized post-arrest interview, that he conducted

19 such training knowing that Defendant Brown intended to travel

20 overseas and engage in violence with these groups.  He

21 additionally admitted that he recognized that these groups

22 were designated terrorists, were foreign terrorist

23 organizations designated by the United States.

24          Defendant Jordan sought to obtain a passport and

25 had a passport date scheduled to obtain it.  He had --

1   however prior to that occurring, he was arrested.

2   Ultimately, things came to a close on March 19, 2014, when

3   Defendant Brown did in fact attempt to travel from Raleigh-

4   Durham International Airport, his ultimate goal being Syria,

5   and to join a contact that he had made there with the group

6   ISIS.  He had discussed this with Jordan prior to his travel,

7   and informed Jordan that he would be traveling, and the

8   overall goal was that Jordan -- or that -- I apologize --

9   that Brown would be able to establish contacts and would then

10  thereby in the future be able to assist Jordan in later

11  traveling as well.

12          THE COURT:  So it was Brown that was apprehended

13  at RDU?

14          MR. KELLHOFER:  Correct, Your Honor, yes.  At

15  the time Defendant Jordan was actually here and in the

16  hospital.  I believe that more or less summarizes the

17  evidence, Your Honor.  If I didn't already note, that all of

18  the conduct I just described did occur here within the

19  Eastern District.

20          THE COURT:  That was my question, where did it

21  happen.

22          MR. KELLHOFER:  Yes, most -- each of these

23  events and conversations, Your Honor, occurred in the Raleigh

24  area.

25          THE COURT:  Okay.  Mr. Hale, do you care to

1   respond to the Government's proffer?

2           MR. HALE:  No, Your Honor.

3           THE COURT:  Mr. Jordan, sir, did you hear and

4   understand the information that the Prosecutor has just

5   described to The Court?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  And do you dispute any of that

8   information?

9           MR. HALE:  Judge, may I be heard as to that?

10          THE COURT:  Go ahead.

11          MR. HALE:  Some of that may be subject to

12  characterization in different ways, and I don't think that

13  Mr. Jordan would dispute the broad general thrust of what the

14  Government's factual basis is.

15          THE COURT:  Does anything Mr. Kellhofer has

16  described to The Court undermine or negate any material

17  element of the offense charged against Mr. Jordan?

18          MR. HALE:  No, Your Honor.

19          THE COURT:  Okay, alright.  The Court is

20  satisfied with the responses given during this hearing and

21  makes the following findings.  It is the finding of this

22  court in the case of United States of America versus Akba

23  Jihad Jordan, Case 5:14-cr-58, that Mr. Jordan is fully

24  competent and capable of entering an informed plea.  His plea

25  of guilty to the one-count indictment is being made

1 voluntarily. It is supported by an independent factual basis

2 containing each of the essential elements of the offense

3 charged in the indictment. Mr. Jordan's plea to the one-

4 count indictment is therefore accepted and he is hereby

5 judged guilty of the offense charged in the indictment. The

6 Court hereby conditionally approves the plea agreement that

7 the parties have reached in this case. As I indicated

8 earlier, it is anticipated sentencing will be at The Court's

9 January 2015 Term. Defense Counsel is directed to contact

10 Probation before leaving this afternoon, to commence the --

11 to arrange a time to commence preparation of the PSR in this

12 case.

13 Is there anything further regarding Mr. Jordan's

14 case?

15 MR. HALE: No, not from the Defendant, Your

16 Honor.

17 MR. KELLHOFER: Not from the Government, Your

18 Honor.

19 THE COURT: Alright, thank you very much.

20 MR. HALE: Thank you.

21

22 (HEARING CONCLUDED AT 3:15 P.M.)

23

24

25

1

2  STATE OF NORTH CAROLINA        )

3                                 )   C-E-R-T-I-F-I-C-A-T-I-O-N

4  COUNTY OF BEAUFORT             )

5

6

7        I, GAYE H. PAUL, A COURT REPORTER AND NOTARY PUBLIC

8  IN AND FOR THE AFORESAID COUNTY AND STATE, DO HEREBY CERTIFY

9  THAT THE FOREGOING PAGES ARE AN ACCURATE TRANSCRIPT OF THE

10 ARRAIGNMENT HEARING OF UNITED STATES OF AMERICA VS AKBA JIHAD

11 JORDAN, WHICH WAS TAKEN BY ME BY STENOMASK, AND TRANSCRIBED

12 BY ME.

13       I FURTHER CERTIFY THAT I AM NOT FINANCIALLY

14 INTERESTED IN THE OUTCOME OF THIS ACTION, A RELATIVE,

15 EMPLOYEE, ATTORNEY OR COUNSEL OF ANY OF THE PARTIES, NOR A

16 RELATIVE OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL.

17       THIS THE 16TH DAY OF SEPTEMBER, 2015.

18       NOTARY PUBLIC NUMBER 19951950067.

19

20                        /S/ GAYE H. PAUL
21                        COURT REPORTER AND NOTARY PUBLIC
                          CAROLINA COURT REPORTERS, INC.
22                        105 OAKMONT DRIVE, SUITE A
                          GREENVILLE, NC 27858
23

24

25